**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARMANDO DURIGON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>THE TORONTO-DOMINION BANK, BHARAT MASRANI, COLLEEN JOHNSTON, and RIAZ AHMED,<br><br>Defendants. | Case No. 17-cv-1665<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Armando Durigon ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding The Toronto-Dominion Bank ("TD Bank" or the "Company"),

1

and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of TD Bank from December 3, 2015 through March 9, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased TD Bank securities at artificially inflated prices during the Class Period and was economically damaged thereby.

7.     Defendant TD Bank together with its subsidiaries, provides various personal and commercial banking products and services in Canada, the United States, and internationally. TD Bank is a Canadian corporation, which operates through three segments: Canadian Retail, U.S. Retail, and Wholesale Banking. TD Bank's U.S. Retail subsidiary, TD Bank, N.A., is headquartered at Cherry Hill, New Jersey. TD Bank securities trade on the New York Stock Exchange ("NYSE") under the ticker "TD."

8.     Defendant Bharat Masrani ("Masrani") has been the Company's Chief Executive Officer ("CEO") and President throughout the Class Period.

9.     Defendant Colleen Johnston ("Johnston") was the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period until January 2, 2016.

10.    Defendant Riaz Ahmed ("Ahmed") has been TD Bank's CFO since January 2, 2016.

11.    Defendants Masrani, Johnston, and Ahmed are collectively referred to herein as the "Individual Defendants."

12.    Each of the Individual Defendants:

   a.    directly participated in the management of the Company;

   b.    was directly involved in the day-to-day operations of the Company at the highest levels;

3

c. was privy to confidential proprietary information concerning the Company and its business and operations;

d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g. approved or ratified these statements in violation of the federal securities laws.

13. TD Bank is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to TD Bank under *respondeat superior* and agency principles.

15. Defendants TD Bank and Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16. According to a *CBC News* article published on March 5, 2017 about the Company, "the demand to meet 'unrealistic' quarterly goals has intensified in recent years as profits from low interest rates have dropped and banks became required — after the financial meltdown of

2008 — to keep more capital on hand to protect against a downturn in the market." Specifically, "teller's sales revenue goals have more than tripled in the past three years."

**Materially False and Misleading Statements Issued During the Class Period**

17. On December 3, 2015, the Company filed a Form 40-F for the fiscal year ended October 31, 2015 ("2015 40-F") with the SEC. 2015 40-F Attached to the 2015 40-F were certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by Defendants Masrani and Johnston attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

18. Attached as Exhibit 99.2 to the 2015 40-F is the Management's Discussion and Analysis, which stated the following about the Company's non-interest income:

> **NON-INTEREST INCOME**
> Non-interest income for the year on a reported basis was $12,702 million, an increase of $325 million, or 3%, compared with last year. Adjusted non-interest income for the year was $12,713 million, an increase of $616 million, or 5%, compared with last year. The increase in adjusted non-interest income was primarily driven by increases in the U.S. Retail, Canadian Retail, and Wholesale Banking segments, partially offset by the Corporate segment. U.S. Retail non-interest income increased primarily due to the contribution from Nordstrom and the impact of foreign currency translation, partially offset by lower gains on sales of securities. ***Canadian Retail non-interest income increased primarily due to wealth asset growth, higher personal and business banking fee-based revenue***, and insurance premiums, partially offset by the impact of a change in mix of reinsurance contracts. Wholesale Banking non-interest income increased primarily due to strong debt underwriting fees and corporate lending growth. Corporate segment non-interest income decreased primarily due to the gains on sales of TD Ameritrade shares in the prior year.

**TABLE 9: NON-INTEREST INCOME**
(millions of Canadian dollars, except as noted)

| | 2015 | 2014 | 2013 | 2015 vs. 2014 % change |
|---|---|---|---|---|
| **Investment and securities services** | | | | |
| TD Waterhouse fees and commissions | $ 430 | $ 412 | $ 406 | 4 % |
| Full-service brokerage and other securities services | 760 | 684 | 596 | 11 |
| Underwriting and advisory | 443 | 482 | 365 | (8) |
| Investment management fees | 481 | 413 | 326 | 16 |
| Mutual fund management | 1,569 | 1,355 | 1,141 | 16 |
| **Total investment and securities services** | 3,683 | 3,346 | 2,834 | 10 |
| Credit fees | 925 | 845 | 785 | 9 |
| Net securities gains (losses) | 79 | 173 | 304 | (54) |
| Trading income (losses) | (223) | (349) | (279) | 36 |
| Service charges | 2,376 | 2,152 | 1,966 | 10 |
| Card services | 1,766 | 1,552 | 1,220 | 14 |
| Insurance revenue | 3,758 | 3,883 | 3,734 | (3) |
| Trust fees | 150 | 150 | 148 | – |
| Other income (loss) | 188 | 625 | 473 | (70) |
| **Total** | $ 12,702 | $ 12,377 | $ 11,185 | 3 % |

(Emphasis added).

19. On December 1, 2016, the Company filed its annual report on Form 40-F for the fiscal year ended October 31, 2016 (the "2016 40-F") with the SEC. Attached to the 2016 40-F were signed SOX certifications by Defendants Masrani and Ahmed attesting to the accuracy of the financial statements, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure all fraud was disclosed.

20. Attached as Exhibit 99.2 to the 2016 40-F is the Management's Discussion and Analysis, which stated the following about the Company's non-interest income:

> **NON-INTEREST INCOME**
> Reported non-interest income for the year was $14,392 million, an increase of $1,690 million, or 13%, compared with last year. All segments experienced increases in reported non-interest income. Wholesale Banking non-interest income increased due to higher trading revenue and fees. Corporate segment non-interest income increased primarily due to the contribution from an acquisition in the strategic cards portfolio and higher revenue from treasury and balance sheet management activities, partially offset by a lower gain due to change in the fair value of derivatives hedging the reclassified available-for-sale securities portfolio,

which was reported as an item of note. *The increase in Canadian Retail non-interest income reflected wealth asset growth and higher personal and business banking fee-based revenue.* U.S. Retail non-interest income increased primarily due to fee income growth in personal banking, the positive impact from an acquisition in the strategic cards portfolio, and the favourable impact of foreign currency translation, partially offset by a change in time order posting of customer transactions and an unfavourable hedging impact. Adjusted non-interest income for the year was $14,385 million, an increase of $1,672 million, or 13%, compared with last year.

**TABLE 9: NON-INTEREST INCOME**
(millions of Canadian dollars, except as noted)

| | 2016 | 2015 | 2014 | 2016 vs. 2015 % change |
|---|---|---|---|---|
| **Investment and securities services** | | | | |
| Broker dealer fees and commissions | $ 463 | $ 430 | $ 412 | 8 % |
| Full-service brokerage and other securities services | 853 | 760 | 684 | 12 |
| Underwriting and advisory | 546 | 443 | 482 | 23 |
| Investment management fees | 505 | 481 | 413 | 5 |
| Mutual fund management | 1,623 | 1,569 | 1,355 | 3 |
| Trust fees | 153 | 150 | 150 | 2 |
| **Total investment and securities services** | 4,143 | 3,833 | 3,496 | 8 |
| Credit fees | 1,048 | 925 | 845 | 13 |
| Net securities gains (losses) | 54 | 79 | 173 | (32) |
| Trading income (losses) | 395 | (223) | (349) | 277 |
| Service charges | 2,571 | 2,376 | 2,152 | 8 |
| Card services | 2,313 | 1,766 | 1,552 | 31 |
| Insurance revenue | 3,796 | 3,758 | 3,883 | 1 |
| Other income (loss) | 72 | 188 | 625 | (62) |
| **Total** | $ 14,392 | $ 12,702 | $ 12,377 | 13 % |

(Emphasis added).

21.     The statements contained in ¶¶ 17-20 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's wealth asset growth and increased fee-based revenue was spurred by a performance management system that led to its employees breaking the law at their customer's expense in order to meet sales targets; (2) the Company illicitly increased

customer's lines of credit and overdraft protection amounts without their knowledge; (3) the Company illicitly upgraded customers to higher-fee accounts without informing them; (4) the Company lied to customers as to the risk of the Company's products; and (5) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

22.  On March 10, 2017, *CBC News* published a report on TD Bank revealing that unrealistic sales revenue goals have led employees to breaking the law at their customer's expense in order to meet sales targets and keep their jobs , stating in relevant part:

> **'We do it because our jobs are at stake': TD bank employees admit to breaking the law for fear of being fired**
>
> **Hundreds of current and former employees respond to CBC report with stories of pressure to upsell customers**
>
> By Erica Johnson, CBC News Posted: Mar 10, 2017 5:00 AM ET Last Updated: Mar 10, 2017 6:21 AM ET
>
> *A CBC report earlier this week about TD employees pressured to meet high sales revenue goals has touched off a firestorm of reaction from TD employees across the country — some of whom admit they have broken the law at their customers' expense in a desperate bid to meet sales targets and keep their jobs.*
>
> Hundreds of current and former TD Bank Group employees wrote to Go Public describing a pressure cooker environment they say is 'poisoned,' 'stress inducing,' 'insane' and has 'zero focus on ethics.'
>
> *Some employees admitted they broke the law, claiming they were desperate to earn points towards sales goals they have to reach every three months or risk being fired. CBC has agreed to conceal their identities because their confessions could have legal ramifications.*
>
> - Been wronged?  Contact Erica and the Go Public team
> - *TD teller says clients pay price for bank's 'unrealistic' sales targets*
> - TD Bank shares post worst day since 2014 after CBC story

8

TD insists all its employees are to follow the company's code of ethics, but many employees who contacted Go Public said that's impossible to do given the sales expectations.

*'I've increased people's lines of credit by a couple thousand dollars, just to get SR [sales revenue] points,' said a teller who worked for several years at a TD branch in Windsor, Ont.*

*He admits he didn't tell the customers, which is a violation of the federal Bank Act.*

*Another teller with over 20 years' experience at an Ontario TD branch said she has increased customers' overdraft protection amounts without their knowledge, and increased their TD Visa card limits on the sly — all to earn units towards her sales revenue target.*

Many TD workers wrote to say they are on medical leave, suffering from anxiety and/or depression because of the constant pressure to upsell customers.

One teller on sick leave described how a manager stood behind her three times a day, pushing her to sell more.

'They just really stress you out and say, 'You're not doing good. I need you to do double the amount you've been doing.' I couldn't sleep. I'd be thinking … 'What can I do tomorrow to try and get sales?''

*She admits to upgrading customers to a higher-fee account without telling them.*

'Because that gives us sales revenue. And the customers don't have to sign for it.'

*****

**'I was forced to lie to customers'**

A former TD financial adviser in Calgary says he would downplay the risk of products that gave him a big boost towards his quarterly goal.

*"I was forced to lie to customers, just to meet the sales revenue targets," he said.*

"I was always asked by my managers to attach unnecessary products or services to the original sale just to increase the sales points — and not care if the customer can afford it or not."

'Customers are prey to me': TD teller says clients pay price for bank's 'unrealistic' sales targets

9

> A financial adviser who worked for six years in Nanaimo, B.C., before quitting says "people eventually snap, or lose all sense of themselves and do anything to close sales."
>
> "I have had multiple conversations with branch and district managers. These conversations led to my being asked if I was still the right fit for the job."

23. On this news, shares of TD Bank fell $2.75 per share or over 5% from its previous closing price to close at $49.02 per share on March 10, 2017, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired TD Bank securities publicly traded on NYSE during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of TD Bank, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, TD Bank securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the Exchange Act was violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business TD Bank;

    c. whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d. whether the Defendants caused the Company to issue false and misleading SEC filings during the Class Period;

    e. whether Defendants acted knowingly or recklessly in issuing false and SEC filing

    f. whether the prices of TD Bank's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. 42. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a. TD Bank securities met the requirements for listing, and were listed and actively traded on NYSE, a highly efficient and automated market;

b. As a public issuer, the Company filed periodic public reports with the SEC and NYSE;

c. The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d. The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

32. Based on the foregoing, the market for TD Bank securities promptly digested current information regarding the Company from all publicly available sources and reflected such

information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States, 406 U.S. 128 (1972)* as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

36. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of TD Bank securities during the Class Period.

38.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of TD Bank, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

39.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

40.     As a result of the foregoing, the market price of TD Bank securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of TD Bank securities during the Class Period in purchasing TD Bank securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

41.     Had Plaintiff and the other members of the Class been aware that the market price of TD Bank securities had been artificially and falsely inflated by Defendants' misleading

statements and by the material adverse information which Defendants did not disclose, they would not have purchased TD Bank securities at the artificially inflated prices that they did, or at all.

42. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of TD Bank securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about TD Bank's misstatement of revenue and profit and false financial statements.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were 'controlling persons' of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of TD Bank securities.

48. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by The Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment and relief as follows:

a. declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

b. awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

c. awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 12, 2017  Respectfully submitted,

                                     **THE ROSEN LAW FIRM, P.A.**

                                     By: /s/ Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com


Counsel for Plaintiff