# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ARMANDO DURIGON, individually
and on behalf of all others
similarly situated,

           Plaintiffs,

v.

THE TORONTO-DOMINION BANK, et
al.,

           Defendants.

1:17-cv-1665 (NLH/JS)

**OPINION**[1]

---

JANET TUCCI, individually and
on behalf of all others
similarly situated,

           Plaintiffs,

v.

THE TORONTO-DOMINION BANK, et
al.,

           Defendants.

1:17-cv-1735 (NLH/JS)

---

<u>**APPEARANCES**</u>:

LAUREN M. ROSEN
THE ROSEN LAW FIRM, PA
609 W. SOUTH ORANGE AVENUE
SUITE 2P
SOUTH ORANGE, NJ 07079

---

[1]     The Order accompanying this Opinion consolidates these two
related actions. The Court lists both case captions here as
this Opinion and accompanying Order will be filed under both
dockets in order to effect the consolidation and because they
resolve pending motions on both dockets.

> On behalf of Plaintiff Armando Durigon and Movants Diana Lawler, V Rao Dandamudi, and Sujata Dandamudi in 17-1665

BRUCE DANIEL GREENBERG
LITE DEPALMA GREENBERG, LLC
570 BROAD STREET
SUITE 1201
NEWARK, NJ 07102
> On behalf of Plaintiff Janet Tucci and Movant Ethan Silverman in 17-1735 and proposed liaison counsel for the class

JAMES E. CECCHI
CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.
5 BECKER FARM ROAD
ROSELAND, NJ 07068
> On behalf of Movant John Gilbert[2] in 17-1665

SUSAN M. LEMING
WILLIAM M. TAMBUSSI
BROWN & CONNERY, LLP
360 HADDON AVENUE
WESTMONT, NJ 08108
> On behalf of Defendants The Toronto-Dominion Bank, Bharat Masrani, Colleen Johnston, and Riaz Ahmed in 17-1665 and 17-1735

POMERANTZ LLP
JEREMY A. LIEBERMAN
J. ALEXANDER HOOD II
HUI M. CHANG
600 THIRD AVENUE, 20TH FLOOR
NEW YORK, NY 10016
> Counsel for Movant Ethan Silverman and proposed co-lead counsel for the class

POMERANTZ LLP
PATRICK V. DAHLSTROM
TEN SOUTH LASALLE STREET, SUITE 3505
CHICAGO, ILLINOIS 60603

---

[2]    John Gilbert is incorrectly listed on the docket as a plaintiff in the 17-1665 action.  As explained more fully below, Gilbert is a member of the putative class who has moved in the 17-1665 action to be named lead plaintiff in the consolidated case.  That motion [Doc. No. 17] has been withdrawn and will be denied as moot.

Counsel for Movant Ethan Silverman and proposed co-lead
counsel for the class

GOLDBERG LAW PC
MICHAEL GOLDBERG
BRIAN SCHALL
SHERIN MAHDAVIAN
1999 AVENUE OF THE STARS, SUITE 1100
LOS ANGELES, CALIFORNIA 90067
Counsel for Movant Ethan Silverman and proposed co-lead
counsel for the class

**HILLMAN**, **District Judge**

This Opinion concerns two federal securities class actions
filed in this Court alleging violations of Section 10(b) of the
Securities Exchange Act of 1934 (the "Exchange Act") and Rule
10b-5, promulgated thereunder, and Section 20(a) of the Exchange
Act by Defendants. Ethan Silverman moves for consolidation,
appointment as lead plaintiff, and approval of class counsel.
For the reasons that follow, the Court will grant the motion for
consolidation and will appoint Silverman as lead plaintiff of
the consolidated action. The Court will reserve its decision on
the approval of Pomerantz LLP and Goldberg Law PC as co-lead
counsel and Lite DePalma Greenberg, LLC as liaison counsel
pending supplemental briefing.

**I.**

The Court takes the following facts from the two
complaints. On December 3, 2015, The Toronto-Dominion Bank
filed an annual report on Form 40-F with the U.S. Securities and

Exchange Commission (SEC), announcing its financial and operating results for the fiscal year that ended October 31, 2015.  On December 1, 2016, The Toronto-Dominion Bank filed an annual report on Form 40-F with the SEC, announcing its financial and operating results for the fiscal year that ended October 31, 2016.  Certifications attached to the forms certified to the accuracy of the financial information contained therein.

In March 2017, CBC News published a report revealing that unrealistic sales goals led Toronto-Dominion Bank employees to engage in illegal conduct.  Between December 3, 2015 and this March 2017 publication, class members purchased securities from The Toronto-Dominion Bank.  The publication of this report resulted in shares falling in value and in damages to the class members.

A complaint was filed in the 17-1665 action on March 12, 2017 by Plaintiff Armando Durigon, individually and on behalf of all others similarly situated.  A complaint was filed in the 17-1735 action on March 15, 2017 by Janet Tucci, individually and on behalf of all others similarly situated.[3]  The complaints allege various statements made by The Toronto-Dominion Bank in SEC filings were "materially false and/or misleading" and that

---

[3]     This Court has federal question jurisdiction over these actions pursuant to 15 U.S.C. § 78aa(a).

they failed to disclose material adverse facts.  Specifically,
the following is alleged:

> (1) the Company's wealth asset growth and increased fee-
> based revenue was spurred by a performance management
> system that led to its employees breaking the law at
> their customer's expense in order to meet sales targets;
> (2) the Company illicitly increased customer's lines of
> credit and overdraft protection amounts without their
> knowledge; (3) the Company illicitly upgraded customers
> to higher-fee accounts without informing them; (4) the
> Company lied to customers as to the risk of the Company's
> products; and (5) as a result, Defendants' statements
> about the Company's business, operations, and prospects
> were materially false and misleading and/or lacked a
> reasonable basis at all relevant times.

The complaints bring claims for violations of Section 10(b) of
the Exchange Act and Rule 10b-5, promulgated thereunder, against
all defendants and violations of Section 20(a) of the Exchange
Act against the individual defendants.

On May 11, 2017 in the 17-1665 action, Diana Lawler, V Rao
Dandamudi, and Sujata Dandamudi moved for consolidation, for
appointment as lead plaintiffs, and for approval of class
counsel.  Also on May 11, 2017 in the 17-1665 action, John
Gilbert moved to consolidate, for appointment as lead plaintiff,
and for approval of class counsel.  Also on May 11, 2017 in the
17-1665 action and in the 17-1735 action, Silverman moved for
consolidation, appointment as lead plaintiff, and for approval
of class counsel.[4]

---

[4]     None of the individuals who initially moved to be named
lead plaintiff, including Silverman, were named as plaintiffs in

5

On May 22, 2017, Lawler, Dandamudi, and Dandamudi filed a notice of non-opposition to Silverman's motion, stating they "reviewed the competing lead plaintiff motions [and] do not appear to have the largest financial interest as it appears Movant Ethan Silverman has the largest financial interest in this action." Also on May 22, 2017, Gilbert filed a notice of non-opposition indicating, based on his review of the other motions, he does not have the largest financial interest.

Defendants The Toronto-Dominion Bank, Bharat Masrani, Colleen Johnston, and Riaz Ahmed do not oppose consolidation and take no position on the motions to appoint lead plaintiffs and lead counsel in both actions.

## II.

The Court begins by addressing Silverman's motion to consolidate.[5] Federal Rule of Civil Procedure 42(a) provides:

---

either of the complaints. The movants are merely members of the class. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), plaintiffs are required to publish a notice advising class members that "any member of the purported class may move the court to serve as lead plaintiff of the purported class." Under § 78u-4(a)(3)(B)(iii)(I)(aa), the presumptively most adequate plaintiff is the person who "has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i)" and has satisfied subsections (bb) and (cc).

Silverman is represented by the same counsel as the named plaintiff in the 17-1735 action. Lawler, Dandamudi, and Dandamudi are represented by the same counsel as the named plaintiff in the 17-1665 action. Gilbert has separate counsel.

[5]     Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(ii), where

more than one action on behalf of a class asserting

"If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." "The [Private Securities Litigation Reform Act (PSLRA)] . . . directs that cases should be consolidated where there is 'more than one action on behalf of a class asserting substantially the same claim or claims.'" In Re Lucent Techs. Sec. Litig., 221 F. Supp. 2d 472, 480 (D.N.J. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)).

"The decision as to whether consolidation is appropriate embraces concerns of judicial economy, as well as judicial discretion." Id.

> Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated. Rather, in deciding whether to consolidate actions under Rule 42(a), it must be considered "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, lawsuits, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Id. (alteration in original) (quoting In re Consol. Parlodel

_____

> substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions . . . , the court shall not make the [most adequate plaintiff] determination . . . until the decision on the motion to consolidate is rendered.

Courts frequently decide these motions together, as this Court does here.

Sec. Litig., 182 F.R.D. 441, 444 (D.N.J. 1998)).  "In the absence of an articulated basis to assert confusion or prejudice, consolidation is generally appropriate."  Id.

The Court finds consolidation of these cases appropriate. The complaints are brought against the same Defendants in both actions: The Toronto-Dominion Bank, Masrani, Johnston, and Ahmed.  Both assert violations of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder, and violations of Section 20(a) of the Exchange Act.  Both complaints also preliminarily define an identical class consisting of people and entities who purchased or acquired securities from The Toronto-Dominion Bank between December 3, 2015 and March 9, 2017.

"A common question of law or fact shared by all of the cases is a prerequisite for consolidation."  In re Consolidated Parlodel Litig., 182 F.R.D. at 444.  The Court finds an abundance of common questions of law and fact.  The complaints focus on the same misleading statements made by Defendants to the public, which will be the focal point of the litigation. The Court finds the most efficient way to resolve these questions is by consolidating these actions.  The Court does not find any specific risks of prejudice or confusion.  Accordingly, the Court will consolidate these actions.

**III.**

Silverman moves to be appointed lead plaintiff in this purported class action, which is unopposed by other class members at this time. Even where a motion to appoint lead plaintiff is unopposed, "[a] preliminary, fact-specific inquiry is nonetheless necessary under Rule 23 to determine whether the presumptively most adequate plaintiff will nevertheless betray the interests of the class." In re Party City Sec. Litig., 189 F.R.D. 91, 106 (D.N.J. 1999).

15 U.S.C. § 78u-4(a)(3)(B)(i) provides that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . in accordance with this subparagraph." The following analysis is required:

> (I)  In general. Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

      (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

    (II) Rebuttal evidence. The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff —

      (aa) will not fairly and adequately protect the interests of the class; or

      (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Id. § 78u-4(a)(3)(B)(iii).

  Federal Rule of Civil Procedure 23(a) also governs the appointment of lead plaintiff. It provides, in pertinent part:

  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

  The Third Circuit in In re Cendant Corp. Litigation, 264 F.3d 201 (3d Cir. 2001) outlines the steps a court must follow

in appointing lead plaintiff as required under 15 U.S.C. § 78u-4(a)(3)(B) and Federal Rule of Civil Procedure 23(a).  The Court applies that analysis here.

**A. The Largest Financial Interest Requirement**

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status.  The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'"  Id. at 262.  In making this determination, "courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs."  Id.

During the proposed class period, Silverman (1) purchased 15,000 shares, (2) expended $780,002, and (3) suffered a loss of $49,669.  The other movants who subsequently withdrew their motions for appointment as lead plaintiff recognized Silverman's financial interest was greater than theirs.  The Court finds similarly.  Based on the information before it, the Court finds Silverman has the largest financial interest in the relief sought by the purported class.

## B. Federal Rule of Civil Procedure 23 Requirements

"Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." _Id._ (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (cc)). This "inquiry . . . should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy." _Id._ at 263. This assessment "should be a product of the court's independent judgment," but "need not be extensive." _Id._ at 263-64.

"In conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." _Id._ at 264. "When making these determinations, courts should apply traditional Rule 23 principles." _Id._

> [I]n inquiring whether the movant has preliminarily satisfied the typicality requirement, they should consider whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based."
>     In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it

"has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."

Id. (alterations in original) (quoting Hassine v. Jeffes, 846 F.2d 167, 177, 179 (3d Cir. 1988)). "In making the initial adequacy assessment in this context, courts should also . . . inquire whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." Id.[6]

First addressing typicality, the Court finds Silverman's claim typical of the rest of the purported class. It does not appear Silverman's case relies on a different legal theory or that the circumstances regarding Silverman's loss are markedly different than the rest of the purported class. It appears to this Court that the focus of this case will be on the actions of Defendants in making allegedly misleading statements to the

---

[6] At this stage,

the question . . . is not whether the court would "approve" that movant's choice of counsel or the terms of the retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all.

In re Cendant Corp. Litig., 264 F.3d at 266.

public at large.  It does not appear Silverman's damages arise from anything unique or particular to him alone.  Like the rest of the class, Silverman's damages stem from his purchase of securities in reliance on the alleged misstatements and omissions of Defendants.

As to adequacy, Silverman appears to have both the ability and incentive to represent the purported class vigorously. Further, Silverman has obtained what this Court finds to be adequate counsel experienced in federal securities litigation with a record of favorable verdicts for clients in the past. Finally, there does not appear to be a conflict between Silverman's claims and those of the purported class.[7]

Accordingly, the Court finds Silverman has satisfied the Rule 23 requirements and is presumed the most adequate plaintiff.

## C. Presumption Not Rebutted

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted." Id. at 268.

> [T]he presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render

---

[7]    The Court does not find the lack of information before it regarding the negotiation of a retainer agreement prevents this Court from finding Silverman satisfied the adequacy requirement.

such plaintiff incapable of adequately representing the
        class."

Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).  Under the

statute, "only class members may seek to rebut the presumption,

and the court should not permit or consider any arguments by

defendants or non-class members."  Id.  "[O]nce the presumption

is triggered, the question is not whether another movant might

do a better job of protecting the interests of the class than

the presumptive lead plaintiff; instead, the question is whether

anyone can prove that the presumptive lead plaintiff will not do

a 'fair[] and adequate[]' job."  Id. (alterations in original).

        "If no class member succeeds in rebutting the presumption,

then the district court should appoint the presumptive lead

plaintiff as the lead plaintiff."  Id.  There is presently no

challenge to the appointment of Silverman as lead plaintiff.

Accordingly, the presumption of adequacy stands.  See, e.g., In

re Party City Sec. Litig., 189 F.R.D. at 112 ("Absent such a

challenge, the presumption of adequacy will generally

survive."); Zuckerman v. Foxmeyer Health Corp., No. 96-2258,

1997 WL 314422, at *2 (N.D. Tex. Mar. 26, 1997) ("No purported

class member has presented evidence to rebut this presumption.

Therefore, the Court will appoint the movants as lead

plaintiffs.").

        As Silverman appears to have the largest financial

interest, has satisfied the Rule 23 requirements, and the presumption that Silverman is the most adequate plaintiff has not been rebutted, the Court will appoint Silverman as lead plaintiff in this consolidated action.

## IV.

Finally, the Court addresses the appointment of lead counsel.  15 U.S.C. § 78u-4(a)(3)(B)(v) provides: "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  As the Court finds Silverman is the most adequate plaintiff, this task falls to him.  Silverman moves for approval of his selection of the law firms of Pomerantz LLP and Goldberg Law PC as co-lead counsel and for the firm of Lite DePalma Greenberg, LLC to serve as liaison counsel for the purported class.  While the motion to approve these firms as lead counsel and liaison counsel is unopposed, this Court has a separate, independent obligation to assess Plaintiff's selection on behalf of the class.

There is "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  <u>In re Cendant Corp. Litig.</u>, 264 F.3d at 276.  "When a properly-appointed lead plaintiff asks the court to approve its choice of lead counsel and of a retainer agreement, the question is not whether the court believes that the lead plaintiff could have made a better choice

or gotten a better deal." <u>Id.</u> Rather, "the court's inquiry is appropriately limited to whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." <u>Id.</u>

> In making this determination, courts should consider: (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

<u>Id.</u> "The ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." <u>Id.</u>

The Court initially notes that all three firms appear to be qualified to represent the purported class in this case. However, the Court finds it cannot approve Silverman's selection of class counsel at this time, as the Court has not been provided with sufficient information regarding Silverman's legal experience; Silverman's process in finding, considering, and ultimately selecting the three law firms; or any negotiations or agreements made between the law firms and Silverman. Accordingly, the Court is unable to determine whether Silverman's choice was "the result of a good faith selection and

negotiation process" that was "arrived at via meaningful arms-length bargaining."  Id.

This Court also questions whether it is appropriate to appoint two law firms as co-lead counsel in this case.  "The PSLRA . . . does not expressly prohibit the lead plaintiff from selecting more than one law firm to represent the class."  In re Nice Sys. Sec. Litig., 188 F.R.D. 206, 222 (D.N.J. 1999).  "In certain situations, the appointment of multiple lead counsel may better protect the interests of the plaintiff class.  Where a single firm lacks the resources or expertise to prosecute an action, for example, the approval of multiple lead counsel may expedite litigation."  Id.

However, "[t]he potential for duplicative services and the concomitant increase in attorneys' fees works against the approval of multiple lead counsel."  In re Milestone Sci. Sec. Litig., 183 F.R.D. 404, 418 (D.N.J. 1998).  While "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class,"  15 U.S.C. § 78u-4(a)(6), this "does nothing to assuage concern about multiple counsel," as it "does not guarantee the reasonableness of fees or the non-duplication of services."  In re Milestone Sci. Sec. Litig., 183 F.R.D. at 418.

Silverman has not articulated why it is necessary to have

multiple firms representing the purported class.  He has further
not demonstrated how services will be divided, nor has he
provided assurances that there will not be duplication of
services and additional fees.  Cf. In re Microstrategy Sec.
Litig., 110 F. Supp. 2d 427, 440-41 (E.D. Va. 2000) (finding a
"desire to proceed with two law firms as lead counsel was
reasonable" where there were "pre-existing relationships with
the[] firms," "the two firms ha[d] already worked together in
other litigation," and the "firms s[ought] only to share
resources and divide labor"); Clair v. DeLuca, 232 F.R.D. 523,
527 (W.D. Pa. 2006) (allowing appointment of two firms as lead
counsel "based on the extensive list of duties for lead counsel
outlined in Lead Plaintiff's proposed order of court . . . and
on the allegation that the number of Class members may be 'in
the thousands'").

While the Court finds this to be a complex matter likely
requiring significant legal resources, and while the Court
recognizes Silverman is not requesting two large law firms to
represent the purported class, the Court requires more
information on the necessity of two law firms as co-lead counsel
before it can approve such an arrangement.

The Court finds similar deficiencies in the request for
appointment of liaison counsel.  Nothing has been briefed
regarding a specific need for liaison counsel.  Nor has a

description of proposed duties and responsibilities for liaison

counsel been provided. See, e.g., Clair, 232 F.R.D. at 527-28

(declining to appoint liaison counsel where "[no] resume [wa]s

provided for" the firm, there was no "description of that firm's

proposed duties as liaison counsel," and where there was an

"absence of an explanation of why liaison counsel [was] required

or what their duties might be").

> Within complex litigation, such liaison or local counsel
> are routinely responsible for "essentially
> administrative matters, such as communications between
> the court and other counsel (including receiving and
> distributing notices, orders, motions, and briefs on
> behalf of the group), convening meetings of counsel,
> advising parties of developments in the case, and
> otherwise assisting in the coordination of activities
> and positions. Such counsel may act for the group in
> managing document depositories and in resolving
> scheduling conflicts. Liaison counsel will usually have
> offices in the same locality as the court."

In re Sprint Corp. Sec. Litig., 164 F. Supp. 2d 1240, 1244 (D.

Kan. 2001) (quoting Manuel for Complex Litigation (Third) §

20.221 (1995)). Courts have found "qualified lead counsel

should surely be capable of performing the ministerial tasks

typically assigned to liaison counsel." Clair, 232 F.R.D. at

527-28.

In light of these concerns, the Court will reserve its

decision on approval of class counsel. Silverman is directed to

re-brief his application for approval of class counsel with

particular emphasis on the necessity for two law firms serving

as co-lead class counsel and separate liaison counsel.

Silverman is also directed to brief the steps taken in selecting his chosen firms and details of any retainer agreements entered into and any negotiations regarding such retainer agreements.

An appropriate Order will be entered.


Date:  December 13, 2017            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.